# Freeman's Appeal.

1. Letters testamentary on the estate of a resident of New Jersey in that state and also in Pennsylvania, were issued to executors residing in the latter state. By the settlement of their accounts in New Jersey, a balance of assets in that state was shown for distribution. An Orphans' Court in Pennsylvania has not jurisdiction to compel distribution.

2. An executor of a foreign state is not allowed to take assets in Pennsylvania and carry them out of the state for administration and distribution. Per ALLISON, P. J.

3. An executor in Pennsylvania derives his authority to collect and distribute the assets here by virtue of the letters here granted, and of these alone can he be called to render an account in this forum. Id.

4. Because executors are subject to the Orphans' Court as to some assets they are not so as to all. Id.

5. The domicil of the testator governs the form and construction of his will as to his personal estate and its distribution.

March 10th 1871. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Appeal from the Orphans' Court of *Philadelphia:* To January' Term 1871, No. 140.

The proceedings in this case originated April 15th 1870, in

[Freeman's Appeal.]

the petition of Marcia C. Freeman, a daughter and legatee of Isaac Brown Parker, deceased, for a citation to Frederick Watts and John Brown Parker, executors, &c., of said deceased, to show cause why a decree should not be made ordering them to pay over to her the "sum of $272.749.27, or whatever other sum may be justly due to her out of the balance for distribution" of the estate of the decedent.    The whole of the case sufficiently appears in the following opinion of Judge Allison, the reasons in which were adopted by the Supreme Court.

"The petitioner, Mrs. Marcia R. Freeman, is a daughter of decedent, and a legatee and devisee under his will, which was proved before the register in this city, on the 30th day of November 1865, and had been proved in the county of Burlington, state of New Jersey, on the preceding 5th day of October.

"The executors having been cited by two of the heirs, filed two accounts with the surrogate of Burlington county, showing that there was in their hands for distribution, on the 31st day of December 1869, $1,457,394.58.

"The petitioner asserts that the assets which make up said balance are in the custody and control of the executors, one of whom resides in this city, and the other in Carlisle, in the state of Pennsylvania, and that she is domiciled in Philadelphia.

"The petitioner also alleges, that under the will of her father she is entitled to a portion of the aforesaid balance for distribution, amounting to $272,749.27 or thereabouts.    She therefore prays for a citation to the executors, John Brown Parker and Frederick Watts, directing them to show cause why a decree should not be made ordering them to transfer to her a portion of the balance for distribution which is due to her.

"The answer assigns for cause against the order which the petitioner seeks to obtain, chiefly that a considerable portion of the assets can only be distributed by a decree of the proper court of the state of New Jersey, because, being assets which were held in New Jersey by the testator at the time of his death, they are properly and of right distributable in accordance with the law of the state in which they lie, which is also the law of the testator's domicile, Mr. Parker, at the time of his death, and for many years prior thereto, being a resident of the aforesaid county of Burlington.

"This brings up for decision the power of the court to take jurisdiction of the property of a decedent found in another forum, and bring it into Pennsylvania for administration and distribution.

"The powers and duties of executors are defined by, as they are derived from, the Acts of Assembly relating thereto.    That of 14th June 1836, Purd. Dig. 768, provides that the executors over whom jurisdiction can be exercised are those who derive their authority from the 'registers of the respective counties,' and in

Fretz's Appeal, 4 W. & S. 433, the Supreme Court have said: 'Its provisions relate solely to persons acting in a fiduciary capacity by virtue of a will, or appointment by the register or Orphans' Court having a jurisdiction of the estate of deceased persons.'

" We do not allow an executor or administrator of a foreign state to come into Pennsylvania, and by virtue of his authority derived from another jurisdiction, collect the assets of the estate in Pennsylvania and carry them out of the state for administration and distribution. And where an executor removes from the state, the Orphans' Court having jurisdiction of his accounts are authorized to vacate his letters testamentary, and award new letters, to be granted by the register having jurisdiction, upon such security as the court may think proper: Section 27 of the Act of March 29th 1832. And in the case of an administrator, non-residence is a cause of disqualification, by the express terms of the 27th section of the Act of March 15th 1832. In Sarkie's Appeal, 2 Barr 159, the Supreme Court so ruled.

"By the 16th section of the act last cited, it is provided, if any register shall grant letters testamentary to any person not being an inhabitant of this Commonwealth, without taking the proper bond and sureties, the letters so granted shall be void, and an executor acting under them shall in all respects be treated as an executor in his own wrong, and the register and his sureties are made liable to pay all damages which shall accrue to any person by reason thereof.

" These several Acts of Assembly make it clear that by our law an executor derives all his authority to collect and distribute the assets of an estate which may be found within this jurisdiction, by virtue of the letters which are here granted, and that it is of these assets alone that he can be called on to render an account in this forum. We do not think the position a correct one, that because executors are subject to the Orphans' Court as to any of the assets, they become so as to all. This would be to confound jurisdiction, and would inevitably result in a conflict of authority, which for every reason of order, in the settlement of an estate, and of safety to the person charged with the performance of such a trust, should be avoided. It is an argument which answers and defeats itself, of which the case before us is a clear illustration. The testator died possessed of property situate in five different states. If the principle contended for by the petitioner is a sound one, it follows that we have as many separate jurisdictions, each having control over a part of the assets of the estate, and by reason of such control, drawing to itself all the remaining portions, and as to the whole making separate and possibly conflicting decrees, both as to settlement and distribution. There are already two accounts filed by these executors upon compulsion, at the instance of heirs and legatees in New Jersey, as well as in Penn-

sylvania; the former of these accounts has been audited and stated by the surrogate of Burlington county, notice of which has been given by publication, and no objection having been made to them, a decree has been entered allowing the same as reported. The respondents say they are advised by counsel learned in the law in New Jersey, that said decrees are in accordance with the regular practice of the Orphans' Court of that state, preliminary orders, that they are judicial determinations, that all the items with which the accountants charged themselves, as well as all of the items for which they have claimed credit, and also that the balance resulting therefrom, are correct, and allowed to remain as stated, but that said decrees are neither final nor distributive.

" It is further stated by the respondents, in their answer, that it is the practice of the courts of New Jersey to make a final and distributive decree upon the motion of any one in interest upon an account thus stated and settled.

"Taking this as a correct statement of the facts and of the law, it shows two things: that a portion of the assets which the petitioner asks may be brought into distribution here, so far as their settlements and allowance go, have already passed under the jurisdiction and decree of a foreign tribunal; and also that that which is asked to be done by us Mrs. Freeman can have done by application to the courts of Burlington county.

" It may be objected that in the accounts filed in New Jersey, assets which were collected elsewhere are taken into those accounts, and that the same objection may properly be made there to distribution of the estate as settled by the decrees of the surrogate, that is now made to the claim of the petitioner to have all of the estate brought here for distribution. But it is a sufficient answer to this suggestion that the petitioner had legal notice of the proceedings in the courts of New Jersey, and that she has allowed the decrees of settlement to go without objection, and that if any injury is to follow from the preliminary decrees, as they now stand, it is not too late to apply to the Orphans' Court of Burlington county for relief, as against the orders and determination of the surrogate. Nor is the principle, which we believe to be the true one in a case of this kind, without authority for its support. The cases cited by the counsel for the respondents are in affirmance of it. See Selectmen *v.* Boylston, 2 Mass. 384; Doolittle *v.* Lewis, 7 Johns. Ch. Cas. 45, 47; Dawes *v.* Boylston, 9 Mass. 337; Parsons *v.* Lyman, 20 N. Y. Rep. (Court of Appeals) 103.

" The case now before us is not to be confounded with one in which assets have been collected in the forum of an ancillary administration, when it becomes a question of judicial discretion, whether they shall be distributed in the forum in which they were raised, or remitted to the administrator of the domicil, to be dis-

posed of there according to the law of the domicil, which as to personal property, is the rule of distribution everywhere. In a case of that kind, the case turns not on the fact of jurisdiction, but upon a determination of whether in the exercise of a wise judicial discretion, the funds sought to be taken to another forum, shall be allowed to go there or not. This is settled in Dent's Appeal, 10 Harris 514; Stokeley's Estate, 7 Id. 476; Mothland *v*. Wireman, 3 Penna. R. 188; and in Harvey *v*. Richards, 1 Mason 408. The application before us is in effect to reverse the rule, which is, unless the facts of a particular case require a different course to be taken as to distribution, that after payments of debts and expenses, the assets shall be remitted to the administrator of the domicil for distribution. This is the doctrine in Stokeley's Estate, cited above: and in Dent's Appeal, the application to compel the ancillary administrator to transmit assets to an administrator of the domicil who resided in Washington, D. C., was refused on the specialties of that case; one of which was, the consent of the original administrator to the appointment of the administrator in Pennsylvania, and that all the claimants objected to a transmission of the funds to Mr. Dent in Washington.

" The domicil of the testator at the time of his death is to be regarded as the place of the principal or original administration of his estate, and if this were a request to send the balance of the assets to New Jersey for distribution, it would be entitled to be regarded with greater favor than the one we are now considering, at least so far as the personal property is concerned, this kind of property having no *situs* in contemplation of law. It is attached to the owner's person, whatever he is, and when he dies it descends according to the law of succession which prevails at the place of his domicil.

" The respondent, John Brown Parker, asserts in his answer that the sum claimed by Mrs. Freeman is about $60,000 or $65,000 in excess of her entire interest in the estate, which of itself would render it impossible for us to make the order prayed for at this time; the true balance due to her must first be ascertained before there can be any order made to pay. The respondent also expresses his readiness to pay over to the petitioner the portion of Pennsylvania assets due to her, upon her entering the requisite security to protect the parties in remainder, which she has not yet done.

" Other reasons might be assigned in support of the view which we take of the claim of Mrs. Freeman, but those already stated we deem of themselves sufficient, and therefore dismiss the application."

Mrs. Freeman appealed and assigned the decree dismissing her petition for error.

[Freeman's Appeal.]

*R. N. Willson* and *F. C. Brewster*, Attorney-General (with whom was *C. H. T. Collis*), for appellant, referred to Act of June 16th 1836, § 19, Pamph. L. 792, Purd. 764, pl. 8. The courts have asserted their power over assets collected under foreign letters, and even when the custodian had no ancillary authority: Swearingen *v.* Pendleton, 4 S. & R. 389; Evans *v.* Tatem, 9 Id. 252; Gulick *v.* Gulick, 33 Barb. 92; Mamon *v.* Titsworth, 18 B. Mon. (Ky.) 582; Baker *v.* Smith, 3 Metc. (Ky.) 264; Campbell *v.* Tousey, 7 Conn. 64; McNamara *v.* Dwyer, 7 Paige 239; Selectmen *v.* Boylston, 2 Mass. 384. Courts claim the power to exercise their discretion in respect to what is due to the tribunals of another state: Dent's Appeal, 10 Harris 514; Mothland *v.* Wireman, 3 Penna. R. 185; Stokeley's Appeal, 7 Harris 476; Bryan *v.* McGee, 2 W. C. C. R. 337. All funds of the estate in an executor's hands are trust funds: Abbott *v.* Reeves, 13 Wright 505; Warner's Estate, 2 Whart. 299; Innes's Estate, 4 Id. 184. "Where a testator makes a will and appoints executors in two different countries, the executor of the domicil is not responsible for moneys received by the foreign executor, but which never came into his own hands:" Gaines *v.* Spann, 2 Brockenbrough 83.

*H. Hanson* and *G. W. Biddle* (with whom was *D. Dougherty*), for appellees.—The grant of letters in one state does not make the executors or administrators subject to its courts for other assets collected by virtue of letters from another state: The Selectmen of Boston *v.* Boylston, 2 Mass. 392; Doolittle *v.* Lewis, 7 Johns. Ch. Cas. 45; Dawes *v.* Boylston, 9 Mass. 335; Parsons *v.* Lyman, 20 N. York R. 103. In New Jersey a legatee seeking distribution after the balance is ascertained, must file a bill in equity: Eakins's Estate, 5 C. E. Green's Rep. 481; Salter *v.* Williamson, 1 Gr. Ch. Rep. 480. This case is not to be confused with those in which legatees in Pennsylvania apply for distribution of such of the assets as have been collected by authority of letters issued in Pennsylvania, and before such assets are sent to the forum of the testator's domicil: Mothland *v.* Wireman, 3 Penna. R. 188; Stokeley's Estate, 7 Harris 476, and Dent's Appeal, 10 Id. 514. This is an application that the Orphans' Court of Philadelphia decree distribution of assets in another state, collected by process out of a foreign court, and over which the former court never had or claimed power or authority: Evans *v.* Tatem, 9 S. & R. 252. The executors cannot withdraw New Jersey assets from that state: Aspden *v.* Nixon, 4 How. 467.

The opinion of the court was delivered, May 8th 1871, by

READ, J.—Isaac Brown Parker died in Burlington, N. J., where he was domiciled, on the 10th September 1865, having

[Freeman's Appeal.]

made his will on the 18th August in the same year, which was admitted to probate by the surrogate of Burlington county on the 5th October following, and letters testamentary were issued to the executors, John Brown Parker and Frederick Watts, who were both citizens of Pennsylvania. On the 30th November 1865, letters testamentary were issued by the register of wills of the county of Philadelphia to the said executors.

A first and second account embracing all the assets of the estate were filed by the executors in New Jersey, and allowed by the Orphans' Court, but no distribution was made, that according to the practice of that state being done in the Court of Chancery upon a bill filed, praying for a decree of distribution under the will. On the 13th February 1868, the executors filed their first account with the register of wills of Philadelphia county, which embraced only the Pennsylvania assets, which had been also embraced in the New Jersey accounts. This account was audited, the report of the auditor confirmed, and the decree of the Orphans' Court affirmed by the Supreme Court on the 11th May 1869. On the 27th March 1869, in Parker's Appeal, 11 P. F. Smith 478, the Supreme Court held that the Pennsylvania assets were not to be transmitted to the executors of the domicil (New Jersey) for distribution, there being domestic claimants within the jurisdiction of the ancillary administration. It will be observed that all the proceedings in the courts of Pennsylvania only embraced and applied to the Pennsylvania assets. There was no attempt or pretence to distribute the New Jersey assets in this state.

On the 15th April 1870, Mrs. Marcia R. Freeman, a daughter and legatee of the testator, presented her petition to the Orphans' Court, praying a decree should be made, ordering the executors to pay her her share of all the assets of the estate for distribution, including the New Jersey assets, over which the court never had assumed jurisdiction, as well as the Pennsylvania assets, over which they had plenary power which they had exercised.

The simple question was then presented, Had the ancillary administration any rights or power over the New Jersey assets in the hands of the executors of the domicil which are for distribution by the tribunals of that state? The reasoning in Parker's Appeal, which shows the ancillary administration should not transmit its assets to the principal administration, *à fortiori* shows the principal administration cannot be called upon to transmit its assets to the ancillary administration. Upon general principles no such decree could be made by the Orphans' Court, nor is any such power given to it by the language of the Act of Assembly: Lewis *v.* County of Chester, 10 P. F. Smith 325. The original will was proved in New Jersey, and remains of record there, and a copy of it duly authenticated was produced for probate to the register here, and letters testamentary were issued to the executors under the 12th

[Freeman's Appeal.]

section of the Act of 15th March 1832. The 16th section of that act, prescribing the form of bond to be given by a non-resident executor, shows exactly the power of these executors under the letters testamentary issued here: " shall make a true and perfect inventory of all and singular the goods, chattels and credits of the said deceased being within this Commonwealth."

The domicil of the testator governs the form and construction of his will as to personal estate and as to its distribution, which is made by the appropriate tribunal in each state. It seems therefore to involve an absurdity to ask that the assets of the principal administration should be transferred to the ancillary administration.

The reasons of the learned president judge for dismissing the petition are so satisfactory that

The decree or order is affirmed and appeal dismissed at the costs of the appellant.